309-1006, David Etnier, Sr. Appellant by Patrick O'Shaughnessy v. CJ Three Investments, Inc. by Nancy Cassidy. May it please the court. Counsel. Good morning. My name is Patrick O'Shaughnessy and I represent David Etnier, the plaintiff appellant in this case. This is the junkyard dog case where a case went to trial for a gentleman injured by a dog while visiting an automobile salvage yard. The jury ruled in favor of the defendant and the plaintiff has appealed. This is a very fact-intensive and specific case. These facts have been laid out in the appellate briefs. I'm not going to go through those or re-argue my brief today. There's only a couple points I want to emphasize from the whole thing. And the summary of that is that the plaintiff has met his burdens in this case through the evidence presented at the trial and the evidence so overwhelmingly favors the plaintiff that this verdict cannot stand. The two issues I want to touch upon, the first is the trespass. What the defendant is doing in this case is they're trying to turn a business invitee into a trespasser by crossing what amounts to an invisible line. From the record in this case, you can see we have an enormous junkyard here. There are multiple gates, many posted with signs. These gates are both exterior gates, the ones you enter from the street, and interior gates that you have to pass from one section of the yard to the other. As the evidence shows, sometimes these signs, such as beware of dog or no trespassing, don't mean anything. There were no trespassing signs on other parts of this facility that customers were allowed to enter into. The specific area in question where this attack occurred had a gate that was open or broken and not marked. So you have a 20-foot opening where this gate was down. It was not marked to keep out, not marked as no trespassing, because this gate was missing. So Mr. Ettenaier is following the path to leave the facility, and he enters into this area that, from the defendant's perspective, is a private area and no trespassing, but there's not notice to the plaintiff on that day that he cannot be in there. Second, there were verbal warnings that the defendant and some of his employees discussed, but these were not sufficient as evidence either. The owner of the facility can't recall ever personally telling the plaintiff himself, and two of the employees testified as well. One thinks he was aware he told the plaintiff at one point, imagined that someone told him to stay out, and the other one says that he tells a new face in the office about the private area when he sees him, but there's no testimony about that day, this man knowing to not be in there. He says, the plaintiff, he was never told to not be in the presence of that building. The second major one I want to touch upon is the provocation issue, and there is no direct evidence of provocation in this case. The plaintiff testifies he was attacked from behind by the dog, and this is the only direct testimony, the only witness to the actual attack. The only indirect evidence is an alleged statement that one of the employees said, the plaintiff uttered when he came back into the office, about never having met a dog he couldn't pet, and that's really it for the provocation. That's not even a statement that the plaintiff tried to pet the dog. Well, isn't there a reasonable inference from that? Jerry can draw reasonable inferences from those statements. Isn't there a reasonable inference from that statement that he tried to pet the dog?  I don't think it's a reasonable inference, though, that I've never met a dog I couldn't pet. It's the Roy Rogers, I've never met a horse I didn't like. Well, and Will Rogers didn't meet everybody, but after you've just been bitten by a dog, to make that statement, certainly, I mean, a reasonable person could draw a conclusion. Why would you say that at that time, unless you tried to pet the dog again? I agree, it's an unusual statement under the circumstances. My thoughts on that, first of all, are that the plaintiff denies ever even saying that in the first place. Second, an inference could be drawn that, therefore, he must have tried to pet the dog, but that is an inference, and under the facts and circumstances, I don't think it's the reasonable one, because it's not a direct admission, it's kind of a backwards statement. I've never met a dog that mean. It could be the same thing. It doesn't mean he tried to pet it. So I don't think that it's a reasonable inference, although, quite logically, it could be made as an inference, but I don't think it's sufficient enough in this case to overcome what plaintiff has demonstrated. So the evidence, from the plaintiff's perspective, overwhelmingly favors the plaintiff that this verdict cannot stand. Our request for relief is outlined in the brief for a JNOV or a new trial to be ordered on damages, and for those reasons, we ask the court for that relief. Thank you.  Good morning, Your Honor. Can I please report, counsel? My name is Drew Cassidy. I'm an attorney for the Appleby CJ3 Investments. The issue that brings us here today is simply a manifest way to the evidence issue. And just to put things in context, I'm sure we're all aware of the Pedrick standard. The Supreme Court's most recent recitation is essentially that not only that the opposite conclusion is clearly evident, but alternatively it could be that the findings of the jury are completely unreasonable, arbitrary, not based on any of the evidence. It's respectfully submitted in this case that the plaintiff appellant cannot meet that standard. Counsel is arguing the weight of the evidence, to your honors. He's not arguing that there is no evidence. He simply wants you to come to a different conclusion. I will submit that the facts in this case were sufficient for a jury to have found for the plaintiff, but they were also sufficient to find for the defendant, and that is the province of the jury, and I would ask that your honors not reverse that step in and substitute your judgment for theirs. The, as you know, it's a two count complaint. One under the Animal Control Act and one a strict common law liability claim. There are two issues which were common to both count, either of which, if the jury found for the defendant, would be sufficient for the defense verdict that came in. The one is the trespass. Now, in count two, it was alleged as a trespass in affirmative defense, but in count one, it's an element of plaintiff's case that he's in a place where he has a lawful right to be. Interestingly, that question came out during the jury deliberations, and we were only able to find one case that ever discussed that language in statute. That was the Garcia versus Nelson case, and basically said simply that, means that the plaintiff was not trespassing. The jury was instructed as to that, and without objection. Now, what did the evidence show on the trespassing? It's undisputed, and I do want to quickly go back. It's unclear from the record that I saw as to whether or not the joint exhibit one, that's referenced numerous times in my brief, made its way up here. It is a large aerial diagram, and the layout of the yard is very important, and that's why my brief tries to lay out that description so clearly, because I wasn't sure that that made its way up. There was no small version of it. But it's undisputed that this area was in the lower part of the yard, essentially in the center where the cars you pick are and a horseshoe around it, and that it was completely closed off, except for on the far side of this garage where tow trucks and things are kept is a double gate that goes into the area. Now, the employees of the yard say it is locked most of the time. The plaintiff said that he's been there 40 or 50 times over the years, and it's open about half the time. The plaintiff himself testified that he was aware there were no cars for picking. There was nothing in there for customers to go in for, and that this was nothing but the area where the employee or the owner kept his tow trucks, wreckers, other type of equipment. Now, on the gates, as you're looking from outside in, on the left gate there is a no trespassing sign, and on the right gate, this is a double gate, there is a beware of dogs sign. Again, the plaintiff says he's been there 40 or 50 times. He sees them closed about half those times, so at least 25 times is what the jury hears. He's looked at these gates that say no trespassing and beware of dog. I want to refute from the evidence the plaintiff's argument that there are all kinds of other gates with these signs, and respectfully suggest that's not what the evidence shows. There are a number of gates throughout the yard, but the evidence only shows signs with respect to the dog or trespassing on the entrance gate from Garth Street, on the office, and on these gates. There was no evidence showing signs on any other gates that they may have walked throughout in that yard. Now, in addition to plaintiff testifying he knew this was the owner's private area and these gates saying no trespassing, we have two employees who testified that they had specifically on prior occasions spoken to Mr. Aetnier and said that's Chuck's private area. You don't belong in there. On this particular day, Mr. Aetnier enters this area and gets attacked by the dog. I would submit that this is sufficient evidence for the jury to have found that he was in a place where he did not lawfully belong. I want to discuss the context that this must be looked at. This is the instruction that was given to the jury, and it was tendered by the plaintiff. The latter part of that instruction reads, a person can become a trespasser by going beyond an area where he was invited into an area where he was not intended. Again, I'd submit more than sufficient evidence for a reasonable jury to determine he was in a place where he didn't belong. The other issue which is common to both counts is the provocation. I don't want to dwell on this because, quite honestly, it is a weaker part of our defense, I thought, but we don't know what the jury decided on. The provocation issue, again, it's important to look at in the context of the instruction that the jury was given. That instruction was that provoke means any action or activity, whether intentional or unintentional, which would reasonably expect it to cause a normal animal in similar circumstances to react in a manner similar to that shown by the evidence. Here the plaintiff's version of this was entirely inconsistent with every other bit of evidence in the case. He suggests that he's walking past this garage and a dog that is chained to his right attacks him without warning on his left side. He testifies that without the warning, while everybody else had testified that this dog goes crazy when anybody he doesn't know comes in the area. Finally, in addition to that testimony, the physical evidence is that his glasses, which he testified he lost during the event, were found within five feet of the doghouse. Now, he had testified this dog was on a 20-foot chain and snuck around his left side and got him, but we find his glasses right next to the doghouse. And then when we add the excited utterance, that I've never met a dog I couldn't pet, the evidence clearly suggests that Mr. Ednard, for whatever reason, turned towards this dog that's barking and growling at him, chose to approach it, and was attacked. Is that provocation? I would suggest under the case law, under the notes, under the jury instructions, that is within the province of the jury. I know there are some cases that have ruled on that issue as a matter of law, as to whether or not something's provocation. I don't believe any of those cases are similar to the evidence I just explained, and I do believe it's within the province of the jury. But even if Your Honor's determined that that is, as a matter of law, not provocation, we still have the trespass, and either or would have supported this verdict. Now, I want to turn quickly to count two, the strict common law liability count. Either of those issues that I just addressed were affirmative defenses. Now, the only difference is I have the burden under count two. I would submit there was an element of plaintiff's case under count two that they also didn't prove, as they didn't in count one. The strict liability count essentially requires the plaintiff to show nothing more than that the owner knew the dog was dangerous. Plaintiffs submitted one bit of evidence on this issue that there had been a prior bite and asked the jury, based upon that prior bite, to say he had knowledge. But the evidence, there was certainly sufficient evidence for the jury to determine otherwise on that. The circumstances of that attack was completely separate. This is a serviceman who walked into the yard. The dog charged, barking, but stopped. The dog did not bite him until he stuck his hand in the dog's face, saying I had learned that if the dog smells your hand, it would stop. He also conceded that although he knew Chuck Johnson, the owner of the dog, he never contacted him. He never told him anything about it. Chuck Johnson only learned about it because the guy went in and got some treatment, and the animal shelter called and said you have to quarantine the dog, which Mr. Johnson did. Now, Mr. Johnson testified that this dog hangs around his children, hangs around the schoolyard. He's never had a problem. He then quarantines it with his veterinarian, who has had four contacts with it a day for 10 days, returns it to Mr. Johnson, and the vet's own words say you have no issue with this dog. He's nothing but a big puppy. So, again, could the jury have determined that Mr. Johnson knew the dog was dangerous based upon a bite, prior bite? Absolutely. Is the evidence sufficient for the jury to determine there was no prior knowledge? I submit there was. Again, we don't know what the jury's basis for their verdict in favor of the defense on count two, but I respectfully submit that there was sufficient evidence for the jury to determine that the plaintiff did not meet their elements here. Again, I would respectfully submit that plaintiff is asking nothing more in this case for your honors to weigh the credibility of witnesses and retry this case based upon the record. I would ask that you not do that and that you affirm the defense verdicts. Thank you. Thank you, Counsel. Counsel, you may proceed. If you have any questions, I have nothing further to add. Thank you, Counsel. The court will stand in recess for the next panel change. We will take this case under advisement and rule of dispatch.